**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:25-cv-21529-DPG**

SABRE CORP.,

                Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                Defendants.

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND MEMORANDUM OF
LAW ESTABLISHING THAT JOINDER IS PROPER**

       Plaintiff, SABRE CORP., by and through its undersigned counsel, hereby responds to

this Court's April 30, 2025 Paperless Order to Show Cause (ECF No. 14) ('the "Order")

requiring Plaintiff "file a memorandum showing why joinder of these 90 Defendants is proper,"

and in support thereof respectfully refers this Court to the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

       This action has been filed by Plaintiff to combat e-commerce store operators who trade

upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and

unlicensed products using infringing versions of Plaintiff's federally registered trademark and

patent (the "Infringing Products"). As part of a coordinated effort to sell Infringing Products,

Defendants operate under Internet based e-commerce stores and fully interactive commercial

Internet websites operating under the seller identification names set forth on Schedule "A" to the

Complaint (the "Seller IDs") (ECF No. 10-1), and use these Seller IDs to further their counterfeiting efforts. *Id.* ¶¶ 53-56, 58-60, 62, 65, 85. Defendants take advantage of this anonymity, as well as the mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's trademark and patent rights and exploit U.S. consumers. *Id.* ¶ 84.

Plaintiff faces a "swarm of attacks" on its trademark and patent rights, and "filing individual causes of action against each counterfeiter ignores the form of harm" that Plaintiff faces. *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A",* 334 F.R.D. 511, 517 (N.D. Ill. 2020). Joinder is proper because Fed. R. Civ. P. 20's inclusion of the term "occurrence" allows a plaintiff to join in a single case the defendants who commonly participate in such unlawful occurrences. *Id.*; *see also Chrome Cherry Limited v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 21-cv-05491, 2021 WL 6752296, at *1 ("the Court finds that although Plaintiff has not sufficiently demonstrated that the asserted claims arise out of the same transaction or series of transactions, Plaintiff has sufficiently demonstrated that they arise out of the same occurrence or series of occurrences."). Therefore, joinder of the Defendants is proper at this preliminary stage. Fed. R. Civ. P. 20(a)(2)(A).

## II.     JOINDER OF THE DEFENDANTS AT THIS EARLY STAGE IS APPROPRIATE

Citing paragraphs 72 and 77 of the Complaint, the Court's Order states: "Plaintiff's conclusory allegations tying Defendants to one another by alleging that they 'are all transactionally related' and arise 'out of the same transaction, occurrence, or series of transactions or occurrences' without further explanation is not sufficient." ECF No. 14.

A. **The Amended Complaint Contains Specific Allegations Indicating Connections Between the Defendants Exist**

The well-pled allegations in Plaintiff's Complaint establish that Defendants are working in a similar manner to sell Infringing Products, as part of the same "occurrence" of mass harm, *i.e.*, the swarm of all Defendants attacking Plaintiff's federally registered intellectual property rights. The Complaint filed at ECF No 10 alleges:

a) All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions. Compl. ¶ 80.

b) All Defendants have the same or closely related sources for their infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain infringing products from the same upstream sources. Compl. ¶ 83.

c) All Defendants have registered their Seller IDs with a small number of online platforms for the purpose of engaging in infringement. Compl. ¶ 85.

d) All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their infringing activities. Compl. ¶ 87.

e) All Defendants violated one or more of the plaintiff's intellectual property rights in the United States, by the use of common or identical methods. Compl. ¶ 89.

In addition, Plaintiff notes that the Complaint contains detailed allegations supporting joinder of the defendants. For example, the Complaint states: "In order to link the defendants to a common source, Plaintiff analyzed shared attributes across products, distribution patterns, and

digital footprints. This involved cross-referencing physical, logistical, and digital evidence to uncover hidden connections in supply chains." Compl. ¶ 94. "One of the key methodologies Plaintiff used in this process was product attribute analysis. This analysis revealed that the designs of Defendants' products that infringe Plaintiff's [REDACTED][1] are identical or near identical. For example, the overwhelming majority of Defendants who infringe the [REDACTED][2] advertise the same identical infringing products (illustrated below) to advertise their inferior imitation products, indicating one common source of supply, manufacture or distribution." Compl. ¶ 96. The allegation is followed by images containing examples of the aforementioned identical Infringing Products. *Id.*

In fact, 79 of the 90 Defendants use an identical product or near identical product across seller accounts and marketplaces, indicating one common source of supply, manufacture or distribution, as can be seen in the examples in the Complaint and in the screenshot evidence filed under seal as Exhibit 1 to Plaintiff's declaration in support of the Application for TRO.

The Complaint also states: "Another key methodology was analysis of packaging and labeling. This analysis revealed that the packaging and labeling for all the products is identical or substantially similar." Compl. ¶ 97. The allegation is followed by images containing examples of the aforementioned identical product packaging. *Id.*

In fact, 71 of the 90 Defendants use identical or near identical product packaging, as can be seen in the examples in the Complaint and in the screenshot evidence contained in Exhibit 1 attached to Plaintiff's TRO declaration. See ECF No. 13-4 through 13-5.  The packaging is the same shape, size, and contains the exact same combination and shade of black and green colors.

---

[1] The unredacted intellectual property listed can be seen in the Complaint, which was filed under seal pursuant to the Court's Order filed at ECF No. 9.
[2] *Id.*

In addition, the packaging contains the same layout and placement of the text containing the product descriptions. Examples can be seen in the Complaint as well as in the Exhibit 1 TRO evidence. See Compl. ¶ 97; ECF Nos. 13-4 through 13-5. This further indicates one common source of supply, manufacture or distribution.

Furthermore, the Complaint states: "The defendants use identical or substantially similar product photography/descriptions across seller accounts on the same marketplaces. These defendants often design their online stores to appear as though they are selling genuine products while in fact selling infringing copies." Compl. ¶ 98.

Here, 70 of the 90 Defendants utilized the same exact product photograph to advertise their Infringing Products, which further indicates that these defendants share a common manufacturing source or distribution center. See ECF Nos. 13-4 through 13-5.

Moreover, as evidenced in the Schedule "A" to the Complaint, the Defendants' Seller IDs promote, sell, and offer to sell the Infringing Products on just four platforms – Amazon, Alibaba, AliExpress, and DHGate. See ECF No. 10-1. If the Court deems necessary, Plaintiff can file an Amended Complaint that includes this allegation.

As demonstrated throughout this memorandum, the majority of district courts agree that the aforementioned allegations establish a logical relationship supporting joinder. Joinder at this stage is consistent with *hundreds* of factually similar cases and comports with the strongly encouraged policy of "entertaining the broadest possible scope of action consistent with fairness to the parties." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).[3]

---

[3] Indeed, in the past several years, similar cases have been filed and permitted to proceed by thirteen (13) district court judges in this district. Similar cases against multiple e-commerce store seller aliases have been filed across the country for over a decade. *See, e.g. Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.*, No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *Volvo Car Corporation, et al. v. The Unincorporated Associations Identified in Schedule A*, No. 18-cv-00977 (E.D. Va. Feb. 6, 2019); *CCA and B, LLC v. Douyong toy, et al.*, No. 19-cv-01851 (N.D. Ga. Apr. 25, 2019); *Talavera Hair Products, Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd., et*

**B.  The Relationships Between the Defendants Are Yet to be Discovered**

Plaintiff's counsel has witnessed firsthand how seemingly unrelated e-commerce stores are often revealed to be connected once the TRO is implemented and discovery is underway. In factually similar cases Plaintiff's counsel has filed in this district, the associations between defendants has often come to light only later in the litigation. For example, in *Safety Nailer LLC v. The Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 1:21-cv-22703-BB (S.D. Fla. July 26, 2021), Plaintiff's counsel learned of 54 defendant stores' common ownership only after the TRO was entered.[4]

In *Betty's Best, Inc. v. The individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 1:23-cv-22322-DSL (June 22, 2023), Betty's Best, Inc. filed a lawsuit alleging violations of its intellectual property by more than 1,400 defendants. In addition to similarities in the infringing product listings and the counterfeit products themselves, Betty's Best, Inc. ("Betty's Best") noted that certain defendants had identical or near identical listings that infringed the exact same trademarks and copyrighted works, but these defendants were standalone e-commerce stores (rather than seller IDs on third-party marketplace platforms) with no ascertainable or verifiable identity.

Over the course of the litigation, it was revealed that 64 of the defendant stores were owned and operated by 24 Chinese business entities.[5] It was also revealed that the same 24 Chinese entities owned and operated 85 defendant e-commerce stores in another case Betty's Best filed in the Northern District of California against anonymous Facebook advertisers who

---

*al.*, No. 18-cv-00823 (S.D. Ca. Apr. 30, 2018), including hundreds of cases in the Southern District of New York and the Northern District of Illinois.
[4] See "Exhibit A – Defendants List" filed in *Safety Nailer LLC v. The Individuals, et. al.*, Case No. 1:21-cv-22703-BB (S.D. Fla) at Docket No. 36-1.
[5] See "Chart of Defendant Entities and Sales" filed in *Betty's Best, Inc. v. The Individuals, et. al.*, Case No. 1:23-cv-22322-DSL (S.D. Fla.) at Docket No. 121-1.

infringed Betty's Best's intellectual property.[6] Months later, the 24 Chinese entities disclosed ownership of a 65th defendant store in the Florida action.[7] Well after Betty's Best had reached a settlement with the 24 Chinese entities, Plaintiff's counsel learned that the same entities owned an additional 34 defendant stores named in a subsequent case filed by Betty's Best in the Northern District of Illinois for claims involving violations of the same intellectual property rights.[8]

The aforementioned information linking 184 defendants in three separately filed actions was only uncovered after months of discovery in the Florida action. Betty's Best, like the plaintiff in this case, had made well-pleaded allegations based on the information available to it at the time of filing. But the connections between the defendants only came to light in the discovery process. This is an important consideration for the Court in exercising its discretion to find joinder at this stage proper.

### C. Plaintiff Has Met the Requirements for Permissive Joinder Under Federal Rule of Civil Procedure 20

The Supreme Court has stated that under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (quoting *Gibbs*, 383 U.S. at 724). Above all, "***[j]oinder of parties is generally encouraged in the interests of judicial economy***, subject to fulfillment of two prerequisites: (1) the persons who are joined as plaintiffs must be interested in claims that

---

[6] *Betty's Best, Inc. v. The Facebook Advertisers Listed on Schedule A*, Case No. 3:23-cv-04716-JSC (N.D. Cal. Sept. 13, 2023). See Defendants' Motion to Quash Subpoena to Meta Platforms filed at Docket No. 42 acknowledging that the 85 California defendant stores are owned by the same business entities disclosed in the Corporate Disclosure Statements filed by the group of 64 defendants in the Florida action.
[7] See "Joint Notice of Settlement" filed in *Betty's Best, Inc. v. The Individuals, et. al*., Case No. 1:23-cv-22322-DSL (S.D. Fla.) at Docket No. 454.
[8] See *Betty's Best, Inc. v. The Individuals, et. al*., Case No.: 1:24-cv-07884 (N.D. Ill. Aug. 29, 2024), Notice of Voluntary Dismissal filed at Docket No. 38.

arise out of the same transaction or occurrence, or series of transactions or occurrences; and (2) all the parties joined must share in common at least one question of law or fact." *Gittens v. School Bd. Of Lee County.*, Case No: 2:16–cv–412–FTM–MRM, 2018 WL 839242, at *1 (M.D. Fla. Feb. 13, 2018) (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled other grounds*, *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003)) (emphasis added).

As to the first prong of Fed. R. Civ. P. 20(a)(2), courts have applied this "transaction or occurrence" requirement using a "case-by-case approach" based on a "flexib[le] . . . standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." *See In re EMC Corp.*, 677 F.3d at 1358 (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 (3d ed. 2001)). In analyzing whether parties are properly joined under Rule 20, "the term 'transaction' is a world of flexible meaning that 'may comprehend a series of many occurrences, depending not as much upon their immediateness of their connection as upon their logical connection.'" *El Fakih v. Nissan North America, Inc.*, Case No. 18-cv-60638 BLOOM/Valle, 2018 WL 4193675, at *3 (S.D. Fla. July 26, 2018) (quoting *Gonzalez v. Batsmasian*, 320 F.R.D 580, 581 (S.D. Fla. 2017); *Alexander*, 207 F.3d at 1323).

Fed. R. Civ. P. 20 similarly does not define "occurrence" and courts have not considered the meaning of "occurrence" apart from the meaning of "transaction." *Bose Corp.*, 334 F.R.D. at 516. However, "canons of construction ordinarily suggest that terms connected by a disjunctive . . . be given separate meanings," and the dictionary definitions suggest that "occurrence" is much broader than "transaction." *Id.* An "occurrence" is defined as something that simply happens or appears, and is not necessarily the product of joint or coordinated action. *Id.*; *See also Oakley, Inc.*, Case No. 1:20-cv-05972 (unpublished) (ECF No. 27) ("Plaintiff has sufficiently

demonstrated that [the asserted claims] arise out of the same occurrence or series of occurrences"); *Loewe S.A.*, 1:20 cv-07185 (ECF No. 26) (same).

Moreover, "to satisfy the commonality prong for proper joinder, all that is required is that the plaintiffs share a single common question of law or fact." *El Fakih*, 2018 WL 4193675, at *3 (*citing Alexander*, 207 F.3d at 1324; *Beckford v. Dep't of Corrs.*, Case No. 06–14324–CIV 2008 WL 8192939, at *2 (S.D. Fla. Apr. 29, 2008) (holding the commonality prong satisfied when the plaintiffs brought their claims under the same statute).

### 1. Plaintiff's Well-Pled Allegations Establish the First Prong of Fed. R. Civ. P. 20.

"When assessing whether the requirements of Rule 20(a)(2) are satisfied, the factual allegations in the plaintiff's complaint are accepted as true." *Malibu Media LLC v. Does 1-28*, 295 F.R.D. 527, 531 (M.D. Fla. 2012) (citing *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009)). "Rule 20 must be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.* (*citing* Fed. R. Civ. P. 1). Here, Plaintiff's well-pleaded allegations establish that the Defendant Seller ID's are all operating in the same transaction, occurrence, or series of transactions or occurrences and, therefore, joinder is proper. Specifically, the Complaint alleges that Defendants are causing individual, concurrent and indivisible harm to Plaintiff due to Defendants' concurrent conduct. Compl. ¶¶ 116, 137. The Complaint alleges that the Defendant Seller ID's, all of whom are of "unknown makeup" and residing in foreign jurisdictions in their efforts to conceal their identities, redistribute products from "the same or similar sources" and ship those products to fulfillment centers in the U.S. *Id.* ¶ 51. All of these Defendants have registered their Seller ID's with a small number of online platforms for the purpose of engaging in infringing activities. *Id.* ¶¶ 53-62. The Complaint also alleges that the Defendant Seller ID's use payment and financial

accounts associated with the online storefronts "to accept, receive, and deposit profits from their illegal activities", *id.* ¶ 87, and further, that these ill-derived assets are easily transferred or concealed to avoid a favorable monetary award to Plaintiff, *id.* ¶ 88.

Furthermore, the Complaint contains specific factual allegations also indicating the claims against the Defendants arose from the same transaction, occurrence, or series of occurrences. The Complaint alleges that Defendants' infringing products are identical or near identical, and Defendants advertise these products by using the same marketing photographs, indicating one common source of supply, manufacture or distribution. Compl. ¶ 96.

Defendants use identical or substantially similar product photography/descriptions across seller accounts on the same marketplaces, and design their online stores to appear as though they are selling genuine products while in fact selling infringing copies. Compl. ¶ 97. Moreover, as evidenced in the Schedule "A" to the Complaint, Defendants are promoting, selling, and offering to sell the Infringing Products using the same four platforms. See Schedule A, ECF No. 10-1.

The foregoing allegations are not limited to common facts relating to the similarity of the trademark and patent at issue and evidence supporting Plaintiff's claims (which are more applicable to the second prong of the Rule 20 inquiry), but more importantly, demonstrate that these groupings of Defendants are all engaging in the same systematic approach of establishing an esoteric online storefront to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendant can easily conceal to avoid any real liability for their actions. In sum, Plaintiff's specific factual allegations that Defendants are working in a similar manner to sell Infringing Products collectively in the same "occurrence of mass harm" show a logical relationship supporting joinder. *Bose Corp.*, 334 F.R.D. at 516.

Further, even if Defendants are not directly coordinating, Plaintiff's allegations establish that Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Bose Corp.*, 334 F.R.D. at 516. "[I]t is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination." *Id.* Defendants are alleged to be infringers, and "want to blend in to cause consumer confusion." *Id.* at 514.

Also of critical importance is that evidence obtained frequently demonstrates that many of the seller IDs identified as Defendants in the initial pleading are often operated by ***the same person or persons***, even across different online platforms. Plaintiff is not required to show and provide evidence that each of the Defendant Seller ID's is commonly owned at the pleading stage.[9] At the early stage of the proceedings, the Fifth Circuit Court of Appeals found it sufficient to allege that the Defendants are an interrelated group that are concealing their identities. *See Viahart, L.L.C.*, 2022 WL 445161, at *4. Pursuing linking efforts is highly burdensome if not impossible without first receiving seller data from the online platforms through which Defendants attempt to conceal their activities and furthering those efforts through direct discovery to those Defendants. The foregoing efforts, however, are not required by Fed. R. Civ. P. 20 to join multiple Defendant Seller ID's at the pleading stage, especially without

---

[9] Plaintiff has endeavored to more specifically identify these Defendants through Schedule A to the Complaint, rather than permissibly proceeding with identifying each as a fictious Doe. "As a general matter, fictitious-party pleading is not permitted in federal court. [The 11th Circuit] has created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Here, it would be permissible for Plaintiff's initial pleading to simply identify each defendant as a Doe, but Plaintiff has gone even further and identified these sellers with sufficient specificity that the online platforms can act upon any preliminary or final relief ordered by this Court. By either route, the initial pleading should not be dismissed under Rule 20.

adversarial presentation and the opportunity to conduct meaningful discovery from a Defendant opposing joinder.

### 2. Plaintiff's Well-Pled Allegations Also Establish the Second Prong of Federal Rule 20.

Plaintiff's well-pleaded allegations also satisfy Fed. R. Civ. P. 20(a)(1)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." Compl. ¶ 72. In this case, Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's intellectual property in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Florida over the Internet. *Id*. ¶¶ 6, 7, 57, 66, and 99. The overwhelming majority of Defendants have infringed the same trademark and/or patent. *Id*. ¶¶ 96-97. 70 of the 90 Defendants utilized the same product photograph in their infringing listings, which further indicates that these defendants share a common manufacturing source or distribution center. See ECF Nos. 13-4 through 13-5.

In addition, the methods Plaintiff uses to investigate, uncover, and collect evidence about any infringing activity will be the same for each Defendant. Each Defendant may later present different factual evidence to support individual legal defenses, but "[p]rospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation." *First Time Videos, LLC v. Does 1– 500*, 276 F.R.D. 241, 252 (N.D. Ill. 2011).

Moreover, judges in this district who have issued similar orders to the present Order questioning joinder have nevertheless allowed the cases to move forward after the issue was briefed or after certain factual allegations were added to the complaint. *See Tesla, Inc. v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"*, 1:24-

cv-21265-DPG, at Docket No. 54 (S.D. Fla. April 4, 2024); *Tesla, Inc. v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"*, 1:24-cv-21263-MD, at Docket No. 54 (S.D. Fla. Jan. 13, 2025); *Fanatics, LLC v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"*, 1:24-cv-24476-DG (S.D. Fla. Nov. 13, 2024).

Plaintiff's case against each Defendant here involves similar, if not identical, questions of law and fact. Defendants' product listings that infringe Plaintiff's trademark and/or patent are nearly identical.

### D.  The Authority Cited in This Court's Order is Distinguishable

In its Order, the Court cites a specific case addressing joinder, *Omega, SA v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A"*, 650 F. Supp. 3d 1349, 1352 (S.D. Fla. 2023).

In *Omega,* "the Court points Plaintiffs to its prior Order in *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011), as well as the Northern District of Illinois' memorandum opinion and order in *Estee Lauder Cosms. Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182 (N.D. Ill. 2020), which, while not binding on this Court, is particularly persuasive.". See *Omega, SA v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A"*, at Docket Entry No. 65 (S.D. Fla. 2023). However, these cases are distinguishable.

With respect to *Liberty Media Holdings*, that case involved the joinder of defendants downloading the same asserted copyrighted work using BitTorrent technology. *Id.* at 674.  As noted in that case, the only common action taken by the defendants in cases like *Liberty Media Holdings* (i.e., BitTorrent cases), is the defendants clicking "on a command to participate in the BitTorrent Protocol…."  Id. (*quoting Hard Drive Prods., Inc. v. Does 1–188*, 809 F. Supp. 2d

1150, 1163 (N.D. Ca. 2011)).  Unlike the matter at hand, these BitTorrent cases do not involve defendants that are all engaging in a systematic approach of establishing an esoteric online storefront to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendant can easily conceal to avoid any real liability for their actions.  Unlike the mere click of a button to download an allegedly copyrighted work, the matter at hand involves a detailed network of online platforms and sellers that are engaged in the same illicit conduct.

The *Omega* Court also cites to *Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 184 (N.D. Ill. 2020).  The narrow approach in *Estee Lauder* does not permit joinder of any defendants.  Rather, it requires that a plaintiff show that multiple e-commerce store seller aliases are operated by the same individual or entity, i.e., a single defendant.  The information required to meet such a stringent requirement is typically not available prior to court ordered discovery, and even if it was, could easily be circumvented by defendants using false or different information.

Further, *Estee Lauder* relies on distinguishable authority, wherein the defendants were known corporations or entities.  *See Slep-Tone Entm't Corp. v. Roberto*, 2013 WL 5748896, at *2-3 (N.D. Ill. Oct. 22, 2013) (defendants were identifiable, distinct individuals and restaurants providing karaoke entertainment); *ThermaPure, Inc. v. Temp-Air, Inc*., 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2010) (severing case with defendants that were identifiable corporations and entities); *Spread Spectrum Screening, LLC v. Eastman Kodak Co*., 2010 WL 3516106, at *2 N.D. Ill. Sept. 1, 2010) (same); *SB Designs v. Reebok Int'l, Ltd.,* 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004) (same).

14

Unlike the matter at hand, the authority cited by *Estee Lauder* simply does not involve defendants, the specific identity of which, are incapable of being known at the preliminary stages of the proceeding, while simultaneously working in a similar manner as part of the same "occurrence" of mass harm to the plaintiff.  Indeed, subsequent decisions from the Northern District of Illinois involving the same circumstances as the matter at hand have considered the court's decision in Estee Lauder and still found joinder was appropriate.  *See Pink Floyd (1987) Limited v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 21-cv-04406, 2021 WL 7179622, at *1 (N.D. Ill. Oct. 21, 2021) (noting the court's prior decision in *Estee Lauder* and nevertheless holding that "Plaintiff has sufficiently demonstrated that [Plaintiff's allegations] arise out of the same occurrence or series of occurrences … at this preliminary stage.") *Chrome Cherry Limited*, 2021 WL 6752296, at *1 (same).

**E.  Joinder is Consistent with Fairness, Convenience, and Especially Judicial Economy**

Cases like the matter at hand have proven effective at substantially reducing online counterfeiting and infringement, and oftentimes are the only effective remedy for plaintiffs who have exhausted all other enforcement efforts. Indeed, the gravity of these cases was addressed by Executive Order 13904, a copy of which is attached hereto as **Exhibit 1**. "It is the policy of the United States Government to protect consumers, intellectual property rights holders, businesses, and workers from counterfeit goods … and other contraband now being introduced into the United States as a result of the recent growth in e-commerce." *See* Executive Order 13904 of January 31, 2020. It is also ***"the policy of the United States Government to ensure that parcels containing contraband be kept outside of the United States to the greatest extent possible and that all parties who participate in the introduction or attempted introduction of such parcels into the United States be held accountable under the laws of the United States.***" *Id.* (emphasis added).

15

Joinder at this stage also serves the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court. Joinder does not create any unnecessary delay nor does it prejudice any party.

On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike. Plaintiff anticipates that many of these foreign Defendants will be individually subject to default, and there is no prejudice to any defendant, whose liability may be established upon default irrespective of the presence of any other defendant. *See Pink Floyd (1987) Limited*, 2021 WL 7179622, at *1 ("The Court additionally notes that no Defendants are prejudiced by permitting joinder at this juncture."); *Chrome Cherry Limited,* 2021 WL 6752296, at *1 (same).

The resources of the Court and other judges in this district will be substantially taxed if Plaintiff's claims against Defendants are severed into 90 separate lawsuits. "Requiring the filing of separate complaints could flood the courts with thousands of additional single defendant Lanham Act cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications of other lawsuits, or the decrease of filing of cases which on their face have alleged plausible violations of the Lanham Act." *Bose Corp.*, 334 F.R.D. at 517, n.6.

Filing 90 individual lawsuits would require Plaintiff to file 90 motions to seal, motions for temporary restraining order and alternate service, motions to extend the temporary restraining order if Plaintiff is unable to obtain a Defendant's contact information to serve them timely, and motions for preliminary injunction, plus a significant number of motions for default judgment given many defendants in these cases choose to default. Additionally, as judges in this district require hearings on motions for preliminary injunction, 90 hearings would also be required, including in person hearings given some judges' requirements. Furthermore, as the 90 cases are

related, it is possible the 90 cases will be assigned to the same district judge, and that judge will need to handle those motions and hearings.  As the *Bose* court identified above, the inevitable effect of filing separate lawsuits for each defendant would be the slowdown of adjudications of lawsuits in the district.

Moreover, Defendants would be prejudiced by the filing of 90 separate lawsuits. While it is not immediately apparent that the 90 Defendants are interrelated, as explained above it is Plaintiff's counsel's experience that many defendants inevitably are related. Once a TRO is entered and defendants are provided notice of the lawsuit, it is common for groups of defendants to contact plaintiff's counsel admitting they are interrelated. These groups can be comprised of anywhere from a handful to upwards of 100 defendants.

Defendants will be prejudiced if they are required to hire counsel to defend multiple lawsuits rather than just one. All parties, including this Court, would benefit from briefing and deciding one motion to dismiss or to modify a preliminary injunction as opposed to 64 or 85 nearly identical motions, which would have occurred had the courts in the two aforementioned *Betty's Best, Inc.* actions severed the cases into individual lawsuits. For this reason, if the case is severed, the parties may ultimately request that some cases be consolidated to save judicial resources.

Not only would Plaintiff's costs increase, but so too would Defendant's costs. The cost of retaining counsel to negotiate the resolution and ultimately the dismissal of multiple lawsuits would be astronomical in comparison to just one. Moreover, Plaintiff's settlement expectations will increase as its costs increase, which would further diminish the likelihood of efficient resolution of the claims. The efficiency that joinder of the 90 defendants in this case promotes

17

ultimately benefits all parties and not just Plaintiff. On the other hand, severance of these claims will prejudice Plaintiff and Defendants alike.

## III.     CONCLUSION

Cases like the present case are one of the few effective mechanisms for stopping and deterring online counterfeiting. In sum, Plaintiff's well-pleaded allegations establish that the named Defendant Seller ID's and e-commerce stores are participating in the unlawful occurrence or series of occurrences and that joinder is proper. Plaintiff (as well as other brand owners) would be severely prejudiced if it were required to file separate lawsuits simply because Defendants registered a particular e-commerce store using a different Defendant Internet Store. *Shambour v. Carver County*, 2014 WL 3908334, at *6 (D. Minn. Aug. 11, 2014) ("In the matter at hand, joinder is proper because the alleged acts similarly support a larger allegation of a systematic problem and the Court is persuaded that keeping Shambour's claims together is not only permissible but preferable.").

For the reasons set forth above, joinder of Defendants is proper. The approach is consistent with other courts and comports with the strongly encouraged policy of entertaining the broadest possible scope of action consistent with fairness to the parties.

Dated: May 12, 2025                   Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com
ANGELA M. NIEVES
Florida Bar Number: 1032760
angela.nieves@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433

561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Sabre Corp.*